■ CYNTHIA McKAY, Respondent, v JOSEPH CIANI, Appellant. [732 NYS2d 447] —Peters, J. Appeal from a judgment of the Supreme Court (Lynch, J.), entered July 11, 2000 in Schenectady County, upon a verdict rendered in favor of plaintiff.

The relevant facts in this matter are contained in two prior appeals before this Court (280 AD2d 808, *lv denied* 96 NY2d 713; 267 AD2d 581). Briefly, in 1994, during plaintiff's employment with the County of Schenectady as a medication room nurse, she entered into counseling for a substance abuse problem with defendant, a licensed social worker and Director of the County's Employee Assistance Program (hereinafter EAP; *see*, 280 AD2d 808, 809, *supra*). Defendant encouraged her to have numerous sexual liaisons as part of her therapy and, after her release from a treatment facility in the summer of 1994, made his own sexual proposition to her, thus beginning their long-term sexual relationship (*see*, *id.*). At its conclusion, plaintiff commenced this action against defendant alleging, *inter alia*, negligence, malpractice and the intentional

infliction of emotional distress.[1] After joinder of issue, defendant moved to amend his answer so as to interpose numerous affirmative defenses, including one alleging that the action was barred by provisions of the Workers' Compensation Law. Supreme Court (Caruso, J.) denied the motion and this Court subsequently affirmed that order (267 AD2d 581, *supra*). Defendant thereafter unsuccessfully moved for reconsideration.

After a jury trial, plaintiff was awarded $300,000 for past pain and suffering, $115,000 for lost wages, $20,000 for medical expenses, $450,000 for future pain and suffering, and $385,000 for future lost wages, for a total award of $1,270,000. From that judgment, entered on July 11, 2000, defendant appeals. Defendant further appeals from the denial of his motion to set aside the verdict and from the denial of his earlier motion for reconsideration.

We decline to review defendant's motion for reconsideration since the issue is not properly before us. While generally "[a]n appeal from a final judgment brings up for review * * * any non-final judgment or order which necessarily affects the final judgment" (CPLR 5501 [a] [1]), such review will not be provided if the nonfinal judgment or order had previously been reviewed by us on appeal (*see*, CPLR 5501 [a] [1]; *compare*, *Doe v Community Health Plan-Kaiser Corp.*, 268 AD2d 183, 185-186). As this is the procedural blueprint presented here (267 AD2d 581, *supra*), the issue may not be revisited by a subsequent motion for reconsideration.

Defendant challenges the jury verdict as against the weight of the evidence. He asserts that the evidence presented failed to support a finding that there was a therapeutic relationship between him, as the EAP coordinator, and plaintiff, as an employee-nurse who contacted him in connection with his role as the EAP coordinator. Our review of the verdict is limited to determining whether " 'the evidence so preponderate[d] in favor of the [defendant] that [the verdict] could not have been reached on any fair interpretation of the evidence' " (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746, quoting *Moffatt v Moffatt*, 86 AD2d 864, *affd* 62 NY2d 875 [internal quotation marks omitted]; *see also*, *Puznowski v Spirax Sarco*, 275 AD2d 506, 508; *Coutrier v Haraden Motorcar Corp.*, 237 AD2d 774, 775-776). We are also constrained by the recognition that " 'when factual and credibility issues are in * * * dispute * * * prudent deference [must be given] to the traditional, trusted jury pro-

---

1. Plaintiff's action against the County was dismissed by Supreme Court upon the ground that the Workers' Compensation Law provided plaintiff with her sole remedy. We affirmed (280 AD2d 808, 809-810, *supra*).

cess, so long as the required rationality minimum of evidence is adduced' " (*Stram v Farrell*, 223 AD2d 260, 264, quoting *Campbell v City of Elmira*, 84 NY2d 505, 513).

Upon these standards, we find no basis upon which to disturb the jury's determination concerning liability. Despite defendant's testimony that he considered his position as a referral source rather than as a counseling service, the evidence revealed that he spoke with plaintiff daily and met with her weekly from 1994 through December 1996 except when she attended an in-patient treatment facility. Moreover, defendant admits that when plaintiff received in-patient treatment, he discussed numerous personal issues with her and received updates from such facilities in his role as her EAP provider.

Sheryl Roff, an alcohol and substance abuse counselor who provided therapy to plaintiff commencing in May 1994,[2] testified that she was ultimately told about the relationship between plaintiff and defendant and opined that it emanated from a therapeutic stance. During her treatment of plaintiff, she endeavored to assist plaintiff in severing that relationship. Robert Wishnoff, plaintiff's EAP expert, also testified that he believed plaintiff and defendant shared a therapeutic relationship and that plaintiff relied on defendant for therapeutic contact. The nature of this relationship was again confirmed by the testimony of Susan Cox, a licensed psychologist. All of these witnesses testified that it was their view that the transference phenomenon[3] occurred in the parties' relationship and, as Cox explained in this instance, plaintiff believed that defendant was going to be her savior and help make her life more functional. Notwithstanding defendant's proffer of contrary testimony, which included that of Richard Mastrodonato, a Board-certified psychiatrist, we cannot conclude that the verdict was against the weight of the evidence.

Turning to damages, we find that despite the deference typically accorded to the jury's interpretation of factual evidence (*see, Simeon v Urrey*, 278 AD2d 624; *Ordway v Columbia County Agric. Socy.*, 273 AD2d 635), the award for pain and suffering appears to "deviate[ ] materially from what would be reasonable compensation" (CPLR 5501 [c]). There is no dispute

---

**2.** Roff is a certified social worker who holds a Master's degree in social work.

**3.** Transference describes "a patient's emotional reaction to a therapist and is 'generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past' " (*Simmons v United States*, 805 F2d 1363, 1364, quoting Stedman's Medical Dictionary 1473 [5th ed 1982]).

that plaintiff suffered from preexisting emotional and substance abuse issues before her involvement with defendant. Testimony of experts and others confirmed that these preexisting conditions were exacerbated by this relationship, thereby causing plaintiff to suffer from posttraumatic stress disorder due not only to the termination of the sexual relationship, but also to a greater violation of her trust. Evidence described the parties' sexual relationship as a replication of the childhood abuse that plaintiff suffered at the hands of her uncle, of which defendant was aware. Extensive testimony was also presented concerning plaintiff's change in personality subsequent to her involvement with defendant, and Roff, Cox and Mastrodonato all agreed that plaintiff would indefinitely suffer from posttraumatic stress disorder despite treatment.

Without an intent to minimize the nature and extent of plaintiff's injuries, we conclude that the jury award for pain and suffering must be reduced since it deviates materially from what would be considered reasonable compensation (*see, e.g., Mathie v Fries*, 121 F3d 808 [inmate-plaintiff raped by director of prison security awarded $250,000 in compensatory damages for posttraumatic stress disorder]; *Simmons v United States*, 805 F2d 1363 [the plaintiff recovered $150,000 for posttraumatic stress disorder resulting in hospitalization and a later suicide attempt against a government social worker who seduced her during therapy; modification not sought on appeal]; *Andrews v United States*, 732 F2d 366 [award of $70,000 against United States Navy physician's assistant who seduced the plaintiff during therapeutic relationship causing severe depression and dissolution of marriage; modification not sought on appeal]; *Laurie Marie M. v Jeffrey T. M.*, 159 AD2d 52, *affd* 77 NY2d 981 [the plaintiff's award of $200,000 reduced to $100,000 for posttraumatic stress disorder resulting from stepfather's sexual abuse]; *Genao v State of New York*, 178 Misc 2d 512 [psychiatric patient awarded $250,000 for pain and suffering for injuries sustained as a result of rape while a patient at State hospital]). Mindful that our discretion in this arena should be sparingly exercised (*see, Coutrier v Haraden Motorcar Corp.*, 237 AD2d 774, 777, *supra*), we find that the evidence does not support a total award for pain and suffering in the amount of $750,000 but, because of the particularly egregious nature of defendant's conduct, we find an award of $375,000 to be appropriate (*see*, CPLR 5522 [b]).

As to the contention that the award of lost earnings was against the weight of the evidence or, in the alternative, not supported by the evidence presented, we disagree. Based upon

the numerous accounts contrasting plaintiff's abilities before and after she became involved with defendant and, more importantly, the expert testimony analyzing the psychological effects that the relationship had upon her, we conclude, giving due deference to the jury's assessment of credibility (*see, Puznowski v Spirax Sarco*, 275 AD2d 506, 508, *supra*), that its determination that defendant was the proximate cause of plaintiff's disability is firmly grounded (*see, Lolik v Big V Supermarkets*, 86 NY2d 744, 746, *supra*).

Yet, we must reduce the award rendered for plaintiff's loss of future earnings since the evidence at trial did not establish the amount awarded with reasonable certainty (*see, Ordway v Columbia County Agric. Socy.*, 273 AD2d 635, 637, *supra*; *Seargent v Berben*, 235 AD2d 1024, 1025). Plaintiff's expert, Duff Driscoll, a certified public accountant, testified that plaintiff's future lost earnings totaled $285,082 based upon various factors which were not disputed. Since the $385,000 award given by the jury is not supported by the evidence introduced at trial, this award cannot exceed $285,082—the amount supported by plaintiff's expert.

Crew III, J. P., Spain, Carpinello and Rose, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded plaintiff future lost earnings of $385,000 and damages for past and future pain and suffering of $750,000; new trial ordered on the issues of future lost earnings and damages for pain and suffering unless, within 20 days after service of a copy of the order herein, plaintiff stipulates to reduce the awards for future lost earnings and damages for past and future pain and suffering to $285,082 and $375,000, respectively, in which event the judgment, as so reduced, is affirmed.